# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY DAVID BROOKS CLARK, ) <br> as Administrator for the Estate of ) <br> Tamara Bowens, ) <br>                    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OLD MUTUAL FINANCIAL NETWORK ) <br> And FIDELITY AND GUARANTY LIFE, ) <br> ) <br>                    Defendants. ) | Case No. 07 C 4895 <br><br> Hon. George W. Lindberg |

## MEMORANDUM OPINION AND ORDER

Before the court is defendant OM Financial Life Insurance Company's ("OM"), formerly known as Fidelity and Guaranty Life Insurance Company, motion for summary judgment as to plaintiff Anthony David Brooks Clark's ("Clark") one-count complaint for breach of contract. Clark is the administrator of the estate of his deceased sister, Tamara Bowens ("Bowens"). This case stems from OM's denial of a claim for death benefits on behalf of Bowens' estate. For the reasons set forth more fully below, defendant's motion for summary judgment is denied.

*I. Motion to Deem Certain Facts Admitted*

Before the court turns to the merits of OM's motion for summary judgment, it must address OM's motion to deem certain of plaintiff's responses to OM's Local Rule ("Rule") 56.1(a)(3) statement of material facts admitted. It is well settled that litigants must strictly comply with the requirements of the court's local rules, including Rule 56.1. *F.T.C. v. Bay Area Business Counsel, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

In response to paragraphs 23 and 26-43 of OM's Rule 56.1(a)(3) statement, plaintiff states that he "lacks sufficient information to form a belief as to the truth of the matter asserted

and thus, denies the same and demands strict proof thereof." This type of response is improper. Therefore, paragraphs 23 and 26-43 of OM's Rule 56.1(a)(3) statement are deemed admitted. *See McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998). Plaintiff's responses to paragraphs 2-4, related to jurisdiction and venue, are also improper and those paragraphs are deemed admitted. Plaintiff denies the facts in paragraphs 13 and 24-25 without providing any supporting record citations. Such denials are improper and the facts alleged in paragraphs 13 and 24-25 are deemed admitted. *See Ammons v. Aramark Uniform Services, Inc.* 368 F.3d 809, 817-18 (7th Cir. 2004). Paragraphs 7, 11, 12, and 44 are also deemed admitted because the record citations plaintiff provides do not support a denial of the facts in those paragraphs.

The motion is denied in part as to paragraph 5. Plaintiff properly denies that Ronald and Tamara Bowens completed the disputed Life Insurance Application and that fact is not deemed admitted. However, the remainder of paragraph 5 is deemed admitted. The motion is also denied as to paragraphs 6, 8-10, 14-19, 21, and 45. Plaintiff has already admitted the allegations in paragraph 8 and his denials of paragraphs 6, 9-10, 14-19, and 21 are proper. The motion is granted in part and denied in part as to paragraph 22. Plaintiff properly denies that the insurance application was complete. The remainder of paragraph 22 is deemed admitted.

## II. Motion to Strike

Plaintiff filed a motion to strike a certification from Dennis A. Gunderson ("Gunderson") defendant filed in support of its motion for summary judgment. Plaintiff moves to strike the certification on the ground that statements therein conflict with Gunderson's sworn deposition testimony. To the extent any of the statements in the certification conflict with Gunderson's deposition testimony, his deposition testimony will control and the conflicting statements in the

certification with be disregarded. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000). The court will consider any admissible statements in the certification that do not conflict with Gunderson's deposition testimony. Accordingly, the motion to strike is granted in part and denied in part.

## III. Relevant Facts

Now the court turns to the merits of OM's motion for summary judgment. The following facts are undisputed unless specifically noted below. Clark is the administrator for the estate of his deceased sister, Tamara Bowens ("Bowens"). In March 2004, Bowens and her husband, Ronald, applied for life insurance policies through OM. At that time, Bowens was thirty-eight years old. On March 27, 2004, the Bowens met with Lucita Zamoras, an insurance agent for OM, to complete Part 1 of the life insurance application ("Part 1"). Ms. Zamoras prepared Part 1 for the Bowens by asking them questions and recording their answers. The Bowens signed Part 1, verifying that their answers therein were complete, true and correctly recorded.

Ms. Zamoras asked Bowens if she had ever been treated or diagnosed with heart disease, heart attack, chest pain, high blood pressure, high cholesterol, murmur palpitations, or any other disorder of the heart or blood vessels. Mrs. Bowens responded "yes" to that question and Ms. Zamoras underlined the term high blood pressure in Part 1. Ms. Zamoras indicated on Part 1 that Bowens' high blood pressure was controlled by taking medication once a day for the two years prior to the application. Ms. Zamoras also noted Bowens' indication that she had not been hospitalized or had surgery in the past ten years and that she had not had any electrocardiograms, x-rays, lab tests, treatments or procedures during that time.

On April 24, 2004, Te'shica Caldwell ("Caldwell"), another OM representative, met with the Bowens to complete Part 2 of the application ("Part 2"), a paramedical examination. Caldwell asked the Bowens the questions in Part 2 and recorded their responses therein. However, at the end of that meeting, Caldwell did not have the Bowens sign Part 2, or verify the accuracy and completeness of their answers to the questions in Part 2. Even though the Bowens did not sign Part 2, OM issued life insurance policies for both of them, effective April 28, 2004. Ronald was the primary insured and OM issued Bowens a dependant's level term life insurance rider, which provided her with $300,000 in death benefit coverage at a standard non-tobacco premium rate. Parts 1 and 2 of the insurance application were attached to the rider and made part of it.

The rider provided that OM would not contest its validity based on statements made in the application after the rider had been in effect during the insured's lifetime for two years from the date of issue. Bowens and Ronald were murdered on March 28, 2006, within the rider's two-year contestability period. The postmortem exam performed by the Cook County Medical examiner indicated that Bowens died from multiple gun shot wounds. It also indicated that, at the time of her death, Bowens' coronary arteries pursued their usual anatomic course and were free of atherosclerotic disease.

After Bowens' death, Clark filed a claim for death benefits with OM on behalf of Bowens' estate. After Clark filed that claim, OM obtained medical records for Bowens from Union Health Services. Those medical records indicated that Bowens had an EKG in August 1999 and the results were abnormal. The records also indicated that Mrs. Bowens reported chest pain in August 1999 and again in January 2001, April 2002, October 2003 and April 2004, and

that she had a prior history of coronary artery disease. According to the Union Health Services records, Bowens was hospitalized for 3 days in October 2003.

In a letter dated November 15, 2006 ("denial letter"), OM informed Clark that it was denying his claim for death benefits on behalf of Bowens' estate and rescinding Bowens' life insurance policy because "material medical information was misrepresented or omitted on" Parts 1 and 2 of Bowens' insurance application. The undisclosed, material medical history cited by OM in its letter included: (1) an abnormal EKG in August 1999; (2) a scheduled stress test; (3) post traumatic stress disorder and elevated blood pressure due to stress; (4) heel spur; (5) intermittent chest pain; (6) vaginal bleeding; (7) prior history of coronary artery disease; (8) hypertension (high blood pressure); and (9) osteopenia. Physicians were not involved in the underwriting or claims process of Bowens' life insurance policy.

## IV. *Legal Analysis*

### A. *Summary Judgment Standard*

To succeed on a motion for summary judgment, the moving party must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must construe all facts in the light most favorable to the non-moving party, Clark, and must view all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. *Denial of Coverage*

OM moves for summary judgment as to Clark's breach of contract claim, arguing that it

properly denied coverage and rescinded Bowens' life insurance rider under Section 154 of the Illinois Insurance Code ("Section 154"), 215 ILCS 5/154 (2008). Under Section 154, an insurer may deny coverage because of a misrepresentation in an insurance application if the misrepresentation "materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154. A misrepresentation is "a statement of something as a fact which is untrue and affects the risk taken by the insurer." *Methodist Medical Center of Illinois v. American Medical Security, Inc.*, 38 F.3d 316, 319 (7th Cir. 1994). An incomplete answer, or failure to disclose material information in a response to a question in an insurance application can constitute a misrepresentation. *New England Mutual Life Ins. Co. v. Bank of Illinois in DuPage*, 994 F.Supp. 970, 976 (N.D.Ill. 1998). "'Materiality' is determined by asking whether a reasonably careful and intelligent person would have regarded the omitted facts as substantially increasing the chances of the events insured against," causing the insurer to reject the insurance application, or place different conditions in the policy. *Royal Maccabees Life Ins. Co. v. Malachinski*, 161 F. Supp. 2d 847, 853 (N.D.Ill. 2001).

OM seeks the entry of summary judgment in its favor as to Clark's breach of contract claim, arguing that Bowens made multiple, material misrepresentations in Parts 1 and 2 of her insurance application. Specifically, OM claims Bowens misrepresented: (1) her history of treatment for chest pain; (2) a recent hospitalization; (3) diagnosis of coronary artery disease; and (4) abnormal electrocardiogram results. OM did not rely on Bowens' alleged failure to disclose a heel spur, vaginal bleeding or osteopenia, which it included in the denial letter, in its motion for summary judgment.

As an initial matter, it is undisputed that Bowens did not sign Part 2 and did not verify

that she read the questions and answers included in Part 2, or that to the best of her knowledge and belief, the statements therein were complete, true and correctly recorded. As stated above, at this stage in the proceedings, the court must construe all facts in the light most favorable to Clark and must draw all inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because Bowens did not sign or verify the information included in Part 2, the court will disregard that document for purposes of its summary judgment analysis. In viewing the facts in the light most favorable to Clark and drawing all inferences in his favor, it is possible that Caldwell failed to record, or incorrectly recorded one or more of Bowens' answers to the questions in Part 2. Without Bowens' verification that the information in Part 2 was complete, true and correct, the court will not conclude, or infer that Bowens made any material misrepresentations in her responses to the questions therein.

Now the court turns Bowens' alleged misrepresentations in Part 1, the only remaining ground for OM's motion for summary judgment. OM argues that Bowens made four material misrepresentations in Part 1. Bowens failed to disclose: (1) her history of chest pain; (2) a hospitalization; (3) her diagnosis of coronary artery disease; and (4) abnormal electrocardiogram results. In support of its argument that these nondisclosures were material misrepresentations under Section 154, OM cites to the certification of Gunderson, OM's Assistant Vice President and Chief Underwriter. In the certification, Gunderson states that "[h]ad [OM] known of the medical and health history of Bowens, under guidelines utilized by [OM] . . . and in [his judgment, OM] would not have issued the Rider [to Bowens] as applied for." There is no question that "[t]he materiality of a misrepresentation may be established by the underwriter's testimony or testimony of the insurer's employees." *Methodist*, 38 F.3d at 320. However, under

the facts of this case, the court finds Gunderson's broad and conclusory statement, without more, insufficient to support the entry of summary judgment in OM's favor.

OM did not include any facts in its Rule 56.1 statement related to how Gunderson weighed each of Bowens' four misrepresentations. Would OM have declined to issue the rider to Bowens, or issued the rider with different terms, if she only failed to disclose her history of chest pain, the hospitalization, and the abnormal electrocardiogram results? This question is significant because there is a genuine issue of material fact as to whether Bowens actually had coronary artery disease. In its denial letter, OM stated that Bowens was diagnosed with coronary artery disease. However, in the postmortem exam, the medical examiner found that Bowens' coronary arteries pursued their usual anatomic course and were free of atherosclerotic disease.

Bowens' *diagnosis* of coronary artery disease is not relevant to the court's analysis. The material question is whether Bowens *had* coronary artery disease because if Bowens did, that fact may have materially affected OM's risk or the hazard it assumed in issuing Bowens coverage. If Bowens was diagnosed with coronary artery disease, but did not actually have the disease, that misdiagnosis would not have affected OM's risk or hazard associated with issuing the rider. Thus, Bowens' failure to disclose a misdiagnosis in Part 1 would not constitute grounds for rescinding coverage because a misdiagnosis would not affect OM's risk. On the record presently before the court, it is not clear whether Bowens had coronary artery disease. Therefore, the court cannot determine whether Bowens' failure to disclose the diagnosis constitutes a material misrepresentation sufficient to justify OM's rescission of the life insurance policy.

It is also unclear how much Bowens' failure to disclose the coronary artery disease diagnosis factored into Gunderson's conclusion that had OM known of Bowens' undisclosed

medical and health history, it would not have issued the rider.  If the undisclosed coronary artery disease was a primary factor in OM's decision to rescind Bowens coverage, and Bowens did not in fact have coronary artery disease, the trier of fact may find that OM breached the insurance agreement.  Alternatively, if the diagnosis was a minimal factor in OM's rescission decision and the trier of fact finds that the other three misrepresentation are material, OM may prevail at trial. Regardless, these questions create genuine issues of material fact that require the denial of the motion for summary judgment.

There is also an open question in the record regarding the nature and significance of Bowens' unreported hospitalization.  OM did not include facts in its Rule 56.1 statement that elaborate on the nature of the hospital stay, or why Bowens' failure to disclose it materially affected OM's risk or hazard in issuing the insurance policy.  OM does not argue and has not presented any facts to support a finding that all hospital stays by an individual, regardless of the nature of the stay, increase the risk and hazard of insuring that individual.  Further, Gunderson's conclusory statement that OM would not have issued the rider had it known of Bowens' true medical and health history, does not shed any light on how the unreported hospitalization factored into his conclusion.  Therefore, the court cannot not rule as a matter of law that Bowens' failure to disclose a hospital stay constitutes a material misrepresentation sufficient to justify rescission of the policy.

## V.  Conclusion

For the reasons set forth more fully above and in light of the genuine issues of material fact and open questions in the record, OM's motion for summary judgment is denied.  The parties' joint proposed final pretrial order is due to chambers by 2:00 p.m. on June 23, 2008.

9

ORDERED: Defendant's motion for summary judgment [35] is denied. Plaintiff's motion to strike defendant's certification of Dennis A. Gunderson attached to defendant's motion for summary judgment [44] is granted in part and denied in part. Defendant's motion to deem admitted certain responses by plaintiff to defendant's statement of material facts to which there is no genuine issue [47] is granted in part and denied in part.

E N T E R:

George W. Lindberg
SENIOR U.S. DISTRICT JUDGE

DATED: June 10, 2008